# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

MARGARET WALTON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:16-cv-02487-CKD

ORDER

Plaintiff Margaret Walton seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF No. 21.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 24.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] The parties have consented to magistrate judge jurisdiction. ECF Nos. 7 & 8.

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.   BACKGROUND

Plaintiff was born on December 13, 1968 and last worked in 2006 or 2007 as a residential counselor.[2]  (Administrative Transcript ("AT") 86, 462, 464.)  On December 16, 2011, plaintiff applied for DIB and SSI, alleging that her disability began on October 16, 2006.  (AT 14, 86–89.)  Plaintiff claimed that she was disabled due to back injury, degenerative disc disease, and anemia.  (AT 98.)  After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on December 1, 2014.  (AT 458–505.)  The ALJ subsequently issued a decision dated March 5, 2015, determining that plaintiff had not been under a disability, as defined in the Act, from October 16, 2006, through the date of the ALJ's decision.  (AT 14–25.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 18, 2016.  (AT 7–9.)  Plaintiff subsequently filed this action to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinion of Miguel Lizarraga, M.D. and (2) whether the ALJ improperly discounted plaintiff's credibility.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] Preliminarily, the ALJ determined that plaintiff met the

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

    Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

3

insured status requirements of the Act through December 16, 2011.  (AT 16.)  At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since October 16, 2006, the alleged onset date.  (Id.)  At step two, the ALJ found that plaintiff "has the following severe impairments:  lumbar degenerative disc disease, morbid obesity, left knee degenerative joint disease, pain disorder, depressive disorder NOS, and generalized anxiety disorder."  (Id.)  However, at step three the ALJ concluded that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (AT 18.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC"), finding that plaintiff could "perform sedentary work as defined in 20 CFR § 404.1567(a) and 416.967(b)," except that plaintiff:

> [can] lift/carry 10 pounds occasionally and frequently and stand/walk two hours in an eight-hour workday.  The claimant is not able to operate foot control with left foot and the claimant should have the freedom to use a cane if she is required to walk more than 50 feet.  Mentally, the claimant could perform simple routine tasks with a job not requiring significant judgment and the claimant is able to adapt to a routine environment.

(AT 19.)  At step four, the ALJ determined that plaintiff is unable to perform any past relevant work.  (AT 24.)  However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed.  (Id.)  Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from October 16, 2006, the alleged onset date, through March 5, 2015, the date of the ALJ's decision.  (AT 25.)

/////

---

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.  *Whether the ALJ improperly rejected the opinion of Miguel Lizarraga, M.D.*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

5

In reaching the RFC determination, the ALJ discussed, and weighed, six different medical opinions in the record, including a March 24, 2014 opinion from treating physician Dr. Lizarraga, which the ALJ gave little weight. (AT 22–24.) Plaintiff argues that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Lizarraga's opinion. (ECF No. 12 at 14–20.) The ALJ discussed this opinion and thoroughly explained his reasoning:

> On March 24, 2014, a physical assessment completed by Dr. Miguel [Lizarraga][5] indicated that the claimant['s] emotional factors contribute to the severity of her impairments and the claimant is incapable of even performing low stress jobs. The claimant could sit, stand/walk less than two hours, lift/carry less than 10 pounds occasionally, should rarely look down and occasionally turn her head, look up, and hold her head in a static position. The claimant should rarely climb stairs, should never twist, stoop, crouch, climb ladders, must elevate her legs to chest level 20% of the workday, and would miss work more than four days per month [AT 432–36].
>
> The undersigned gives little weight to Dr. [Lizarraga]'s assessments because he actually does not include any opinions regarding any specific and measurable functional limits. The claimant testified that she sat all day, the day before the hearing, except for 30 minutes lying in the bed [AT 472]. Dr. [Lizarraga]'s opinions are not consistent with his earlier opinions indicating that the claimant did not have any mental impairments and the claimant had no neurological abnormalities, no motor function disorganization, and no atrophy [AT 299–301].
>
> He stated she had limits on the use of her hands; that she must elevate her feet; and said she has a personality disorder. Those opinions are completely unsupported by other substantial evidence in the record. His treatment notes never say anything about any of those limits. He never recommended that she elevate her feet and she never indicated to him that she does so.
>
> He wrote that she could sit for no more than a total of two hours each day. Again that is completely unsupported. In fact, the claimant testified that, except for lying down for 30 minutes on the day before the hearing, she sat virtually all of her waking hours.
>
> Dr. [Lizarraga]'s opinions are completely unsupported by the medical evidence as a whole and inconsistent with the medical opinions of Dr. [David] and Dr. Tambellini.

(AT 23–24.)

---

[5] Dr. Lizarraga is mistakenly referred to as Dr. Lizainga in the ALJ's decision.

6

The ALJ's conclusions are supported by substantial evidence in the record. First, the ALJ appropriately concluded that there is no basis in the record to support Dr. Lizarraga's opined limitations that plaintiff must elevate her legs to chest level 20% of the day and that she is limited in the use of her hands. (AT 23.) It is undisputed that aside from this 2014 opinion the record is devoid of any reference to plaintiff's need to elevate her legs to chest level. Plaintiff argues, however, that the record supports Dr. Lizarraga's manipulative limitations. (ECF No. 12 at 18.) Still, while the record contains a few subjective complaints of arm pain (AT 146, 149, 156, 353) and one subjective complaint of numbness in her fingers (AT 226), the record only contains one objective finding related to either issue. In a treatment note from July 29, 2013, Olena Hays, PA-C lists "radial nerve compression (L) arm" as an objective finding. (AT 361.) However, there is no measurable objective evidence in the record to support plaintiff's alleged manipulative limitations.

Indeed, as the ALJ documented, "[t]here was no medical evidence in the record indicating that the claimant had bilateral nerve damage in her arms and her EMG/NCV was normal." (AT 22.) The EMG/NCV only measured plaintiff's right lower extremity. (AT 221–23). Yet, it follows that if she had a serious issue with her upper extremities, then the record would include some findings based upon measurable objectives, rather than only scant subjective complaints and a single conclusory finding. Thus, the ALJ reasonably concluded that Dr. Lizarraga's opined limitations are not supported by the record.

Second, the ALJ reasonably concluded that Dr. Lizarraga did "not include any opinions regarding any specific and measurable functional limits." (AT 23.) While the wording may not be optimally precise, this conclusion apparently points out the unsupported and conclusory nature of Dr. Lizarraga's opinion, especially in light of the ALJ's other conclusions that the opinion is unsupported by the medical evidence as a whole, and that certain of the opined limitations have no basis in the record. (AT 23–24.). See Magallanes, 881 F.2d 747 at 755 (9th Cir. 1989) (a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion").

////

This conclusion is supported by the record. Dr. Lizarraga's 2014 opinion is contained on a fill-in-the-blank and check-box form. (See AT 432–36.) Aside from listing "paralumbar tenderness" in the blank under "identify the clinical findings and objective signs," the opinion lacks any specific and measurable objective findings to support the conclusory limitations it includes. (See Id.) Moreover, the opinion does not include any detailed discussion of plaintiff's medical condition or the relationship between her condition and the opined limitations. (See Id.)

Third, the ALJ's statements interpreting plaintiff's testimony—that she "sat all day, the day before the hearing, except for 30 minutes lying in the bed" and that "except for lying down for 30 minutes on the day before the hearing, she sat virtually all of her waking hours" (AT 23)—were reasonable and supported by the record. At the hearing, Ms. Walton testified that she spent the day before the hearing "[u]p and down sitting on the couch, and then laying in the bed" but that she only spent "[a]bout 30 minutes" in bed. (AT 472.) She also testified that she spent about 40 minutes doing laundry. (AT 473, 480.) However, when doing laundry, she "put the load in and came back and sat down" (AT 473) and then she sat down while folding the clothes (AT 480). Therefore, the ALJ reasonably concluded that this admitted activity undermines Dr. Lizarraga's opinion that she could sit for no more than a total of two hours each day. (AT 23.)

Fourth, the ALJ accurately pointed out that Dr. Lizarraga's 2014 opinion was inconsistent with both his prior 2012 opinion, and the opinions of state agency medical consultants Dr. David and Dr. Tambellini, which the ALJ gave significant weight. (AT 23–24; Compare AT 432–36 with AT 299–301, 303–05, 332–34.) While plaintiff argues, for various reasons, that these other opinions are not as relevant as Dr. Lizarraga's 2014 opinion (ECF No. 21 at 16–17, 19–20), the inconsistencies are apparent. Furthermore, these inconsistencies were an appropriate consideration for the ALJ since the ALJ's determination here did not rest solely on the opinions of the non-examining physicians. See Lester, 81 F.3d at 831.

Therefore, the court finds that the ALJ provided several specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Lizarraga's opinion.

////

////

2. *Whether the ALJ improperly discounted plaintiff's credibility*

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

<u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009) (<u>quoting</u> <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (<u>quoting</u> <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." <u>Id.</u> at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of limitations due to her lumbar degenerative disc disease, morbid obesity, left knee

9

degenerative joint disease, pain disorder, depressive disorder, and generalized anxiety disorder. Indeed, the ALJ limited plaintiff to sedentary work, with additional physical and mental limitations. (AT 19.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### i. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ observed that the objective medical evidence did not support plaintiff's complaints of "nerve damage" and an inability to manipulate objects:

> At the hearing, the claimant was asked why she could not perform a sedentary assembly job. She considered her response for a time before saying she has "nerve damage" which sends "shooting pain" into her arms. The claimant indicated that when she "grabs stuff" she is barely able to maintain her grasp on the object.
>
> That response tends to detract from the reliability of her testimony. She had never mentioned any such problem to any medical source. If she had such a problem, she would have done so. Since she did not, this tends to show her symptoms are not as severe as she described.

(AT 20.)

This conclusion is supported by the record. As explained above, there are no measurable objective findings in the record to support plaintiff's subject complaints regarding "nerve damage" and an inability to manipulate or grasp objects. Moreover, while plaintiff did subjectively complain of pain in her arm on a few occasions, most of those complaints were made while applying for disability, rather than to a treating source. (AT 146, 149, 156.) Indeed, she only once reported to a treating source complaints of arm pain (AT 353), and on one other occasion reported that she had "some" numbness in her fingers (AT 226). Nowhere in the record

10

did plaintiff complain to a treating source that she was barely able to maintain her grasp on objects.

The ALJ also observed that:

> The claimant's physical condition also appears to be well controlled. The claimant has not sought specialized dietary and neurological care; although she is obese, the record did not show that her obesity caused significant bony abnormality or other findings that would satisfy the severity contemplated in the musculoskeletal or neurological disorders.
>
> [. . .]
>
> In November, 2011, her examination showed no lumbar tenderness or spasms and no neurological deficits [AT 294]. In May 2012, a musculoskeletal assessment completed by treating physician Dr. Miguel [Lizarraga] indicated that the claimant had no neurological abnormalities, no motor function disorganization, and no atrophy [AT 300–01]. In July 2013, the claimant's examination revealed normal gait and normal motor movement [AT 329]. In September 2013, the claimant's musculoskeletal examination showed no joint pain, deformity or weakness, and had full range of motion [AT 396, 403].

(AT 21.) These observations are supported by the record. (See AT 294, 300–01, 329, 396, 403.) Thus, they were appropriate for the ALJ to consider when discounting plaintiff's credibility.

Further, the ALJ pointed out that while plaintiff testified that she has been using a cane for six years, "an orthopedic report completed by Dr. Elvert Nelson on February 8, 2010 showed that the claimant could walk several block and did not use a cane or crutch for ambulation. [AT 231] This detracts from the reliability of her testimony." (AT 21.) While plaintiff points to other evidence in the record showing that plaintiff did use a cane (ECF No. 21 at 22), it remains that Dr. Nelson determined that she did not need one (AT 231). The ALJ reasonably resolved any ambiguity and determined that these discrepancies weighed against plaintiff's credibility.

Moreover, the ALJ accurately noted that plaintiff has not had a panic attack since October 2011 (AT 470), and that her mental examinations were within normal limits (AT 244, 255, 262, 294, 318), all of which undermines her complaints of disabling mental impairment. (AT 24)

### ii. Failure to seek or consistently seek treatment

Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing

a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

The ALJ observed that as of October 2014, plaintiff had "only had two psychotherapy appointments and the record does not show that the claimant continued psychotherapy sessions." (AT 21.) This is supported by the record and plaintiff's testimony. (AT 437, 489.) Such failure to seek treatment, without explanation, belies any assertion that her mental impairments were truly disabling.

Regarding plaintiff's physical impairments, the ALJ observed that "[t]he record showed that the claimant attended physical therapy; however the claimant reported that she could not start the functional restoration program (pain clinic) due to childcare problems" in September of 2009. (AT 21.) This is an accurate account of the record. (AT 243.) Moreover, the record does not demonstrate any further efforts by plaintiff to start the functional restoration program at any point after September 2009.

The ALJ also pointed out that "progress notes did not show that the claimant continued going to physical therapy and there was no evidence [of] lumbar fusion or any other surgeries, no left knee surgeries, and no blood transfusions." (AT 22.) This too is supported by the record. While plaintiff was sent to physical therapy for her back and knee difficulties, she did not continue the treatments, claiming that it did not help. (See AT 469.) While plaintiff argues that this allegedly ineffective physical therapy supports her subjective allegations (ECF No. 21 at 24), the ALJ reasonably interpreted this evidence differently, concluding that plaintiff's choice to not continue with physical therapy undermined her complaints of disabling pain.

### iii. Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v.

1 | Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of
2 | conservative treatment is sufficient to discount a claimant's testimony regarding severity of an
3 | impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ relied on plaintiff's relatively conservative treatment—two lone psychotherapy visits, limited physical therapy and chiropractic care, pain medication, use of a knee brace, and no surgery (AT 283–84, 337, 414, 437, 469–70, 489)—as another proper reason to discredit her credibility. (AT 20–23.)

### iv. Condition can be controlled with medication

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).

The ALJ also determined that plaintiff's physical conditions appeared to be well controlled. Specifically, the ALJ observed:

> The claimant reported that pain medication controlled her left side back pain [AT 337]. Progress notes showed that in 2014, her examinations were within normal limits, except for some lumbar pain with motion, mild left knee tenderness, and mild crepitus but no loss of mobility or instability [AT 337, 340, 348–51, 354, 363, 439]. Progress notes also documented that the claimant is using a knee brace and taking non-steroidal anti-inflammatory medications [AT 439]. The claimant also reported that the knee brace was helping her [414].

(At 21.)

While plaintiff would have the court rely on other evidence in the record of plaintiff's subject complaints of pain, the ALJ appropriately relied on the above-detailed evidence in the record. (See AT 337, 340, 348–51, 354, 363, 414, 439.) Notably, on August 20, 2014, plaintiff told her treating provider that "norco TID daily controls left sided low back pain." (AT 337.) As such, the ALJ reasonably concluded that the record demonstrates that plaintiff's condition is controlled by medication, which thereby discounts her subjective complaints of disabling pain.

////
////

### v. Improper reason with other proper reasons for discounting credibility

Plaintiff takes issue with many of the ALJ's characterizations of the record. Significantly, plaintiff asserts that the ALJ mischaracterized the reason plaintiff did not have back surgery. According to plaintiff, two of her providers indicated that they "did not want to perform surgery because of her morbid obesity not because it was not indicated." (ECF No. 21 at 24.) The record supports plaintiff's assertion that, at least initially, Drs. Nelson and Hambly appear to have found plaintiff to not be a surgical candidate based upon her obesity. (AT 283–84.)

However, even if the ALJ's reliance on the absence of back surgery was not a legitimate reason to discount plaintiff's testimony, any error is harmless because the ALJ provided several other specific, clear, and convincing reasons, based upon substantial evidence in the record, for only partially crediting plaintiff's testimony. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

### V. CONCLUSION

As defendant observes, plaintiff essentially asserts that this court should interpret the record differently than the ALJ did, in order to remand or to award benefits. (See ECF No. 21 at 14–25; ECF No. 24 at 10.) However, as explained, the ALJ's decision is based upon reasonable interpretations, supported by substantial evidence in the record. Therefore, plaintiff's arguments are ultimately unavailing because when the evidence is susceptible to more than one rational interpretation, the court will uphold the ALJ's decision. Tommasetti, 533 F.3d at 1038.

////
////
////
////
////
////
////
////

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 21) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 24) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

Dated: March 15, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

14/ss.16-2487.walton.MSJ